Good morning. Tracy Frittle for the Juvenile Mail. This case presents two issues for this Court. The first is a general, more general issue that has broader application, and that is whether general deterrence is a proper basis for imposing sentence in a juvenile case. Now, the second issue is more specific to the facts of this case, and that is whether on these facts of this case, the Court imposed the least restrictive sentence given the record before the Court, and also the purpose of the Juvenile Delinquency Act, which is to further the rehabilitation of the juvenile. On the first issue, that of whether general deterrence is a proper basis for imposing sentence, this Court's precedents are clear. Juvenile Mail, which is a 2003 case, says that rehabilitation is the only proper basis for imposing sentence. It doesn't say that. It says rehabilitation. A juvenile in the system is presumptively rehabilitatable, and rehabilitation, without question, is a principal or primary goal. But nowhere in that case does it say it is the only goal. Does it? Judge, I believe that it does, in that it says that the discretion of the Court is limited by the purpose of the Federal Juvenile Delinquency Act, and that purpose is to remove juveniles from the regular criminal justice system. Sure. And that happened. That is correct. That did happen. But in the end, a custodial sentence, which was not supported by the record, was imposed, and it was imposed for a general deterrence purpose, which the Court made clear. We have two different disputes now going, the dispute on the legal and the dispute on the factual. You can focus on the legal if you want, but I want to stop you on the factual, too, because I looked very carefully at what Judge Collins said, and he said, with regard to the deterrence part, to simply send you back home with your parents doesn't give you the right message, either. Now, it's true he goes on to talk about the rest of the community, but he's not disregarding this particular individual, and he's thinking, I think, with some justification, look, if we just let you go, that's not a positive thing for your rehabilitation because it tells you that you can get away with it. And isn't that something that he's focused on the defendant exactly the way he's supposed to be? I do believe that Judge Collins did take into consideration the facts of this particular case, but that was not the only thing that he did take into consideration. He also took into the consideration the needs of other juveniles in imposing this particular sentence in this case, and he made that very clear because in that same breath that he said that he was concerned about this particular juvenile, he said there was also a general deterrence goal. Now, there was some back and forth on this particular issue. The government argued that this was a proper basis for imposing sentence, the juvenile against the imposition of sentence on that basis. The Court determined that that was one of the reasons for imposing sentence. Now, I think at best what the record shows is that it was a factor. And with the record before the Court, at a minimum what needs to happen is it needs to go back to the district court so that the district court can say to what extent that did impact the sentence. Well, let me say a couple of things. First, it's quite obvious that you're quoting the transcript correctly. That is to say the judge did talk about not only the deterrent effect on the particular individual, but also if he goes back home and there was no jail time or no incarceration rather than no period of, whatever we're going to call it, then everybody back home would think, hey, there's no consequence. So he clearly said that. But he also said a lot of other things. He sentenced to six months rather than 12 months. It had been represented to him by the government, and he took note of this, that there were English language programs and there were other training programs. And the judge was clearly focused on both the situation of this particular individual. He was, you know, basically the record in front of the judge was he was a good kid, quite young, gone to church and so on, and on the rehabilitation. Why is this one statement enough to overturn everything else? Because it is not just the one statement. The standard is for the court to impose the least restrictive sentence in order to further the juvenile's rehabilitation. The court made it clear that he did find that the juvenile – well, it was clear from the record that the court did not doubt the juvenile's acceptance of responsibility. The court did have consideration for the juvenile in that he saw the juvenile had a very strong relationship with his family and allowed the juvenile to – Why isn't it – why wasn't it legitimate for the district judge, who is very experienced in these matters, parenthetically, to say, look, you know, in effect – now, these aren't his words, these are my words – but in effect, you got yourself in this mess because you were particularly vulnerable to older folks who are going down the wrong track. And one way to help rehabilitate you is to separate you from that environment for long enough so you can get your act together and to really be impressed with how important it is to go straight instead of being mesmerized by the money and the big cars and all that stuff that goes along with the drug business. Well, I don't think the court really did determine that that was necessary. Or it couldn't, at least on the – on the – Not in the words I used, but it sure said so. He said that it was important that the juvenile learn that lesson. And he said that that was his intent. But there was not any information in the record to suggest that that was still necessary. At the time of sentencing, the juvenile had already spent four months in custody, four months away from his family. The goals that the court talked about had been accomplished by those four months. Further, it would have been accomplished by a sentence of juvenile delinquent supervision. The judge plainly didn't think so. And I just go back to what I quoted before. If he thought – he talks about the four months, but he says to simply send you back home doesn't give you the right message, speaking very much of the defendant. So in the judge's mind, the four months wasn't enough. It wasn't completely clear. He didn't have 100 percent assurance that hereafter the defendant would stay on the straight and narrow. Well, but the record was clear that it was sufficient. The fact of the matter is the government put on no evidence whatsoever of any rehabilitative needs on the part of the juvenile. And before he committed this offense, everyone would have said, this is a good kid that wouldn't do something like this. And he tried to drive across the border with a whole lot of marijuana and cocaine. He fell under the influence. Well, and the friends are going to be back in his home again. I mean, there's a reason to think that, you know, he stepped across the line. We need to make sure he takes this very seriously. And the judge's assessment was that more time was necessary to make sure that the defendant would get the right message. At least that's what he says. And I have a hard time saying that he has to close his eyes to the fact that this person did voluntarily and intentionally try to bring a whole lot of cocaine and marijuana into this country. Actually, the court was very clear on the point that he did not believe the juvenile thought that there was cocaine in the vehicle. You're just talking about the marijuana. That's true. But it wasn't an insubstantial amount of marijuana either. The court also made it very clear that he thought that there was a great deal of mitigation in the case. Commercial transactions. He knew he was bringing it in. It wasn't personal use. He was bringing it in to be sold. He was supposed to get $500. And the amount was such that that was a pretty valuable lot to make it to the market. And you wouldn't have guessed that from this kid before. The same thing that causes you with some credibility to be able to say this is a good kid, you don't expect to have a problem in the future, would have led all of us to say this is a good kid, we're not going to have this problem when it occurred. So it seems to me the judge has some basis for saying we want to make sure the message gets in. And his judgment as the sentencing judge is that more time was required, but he does make specific reference to the defendant. So the argument amounts to saying is it improper because he also makes reference to something else? I believe it is because the court set out parameters. He made a point of saying that this was one of the purposes that he was imposing sentence. I think that we are left with nothing to do but to believe the court that it did impose the sentence for the reasons it stated. And if I may just reserve the last 40 seconds. Good morning, Your Honor. May it please the Court. I'm Elizabeth Berenger, Assistant U.S. Attorney on behalf of the United States. I think the Court here has fixed on the crucial issues in this case. The district court did not abuse its discretion when it sentenced the juvenile to six months in the custody of the Attorney General. First, the sentence had a rehabilitative purpose as its primary aim. As Judge Schremer noted, under United States v. Juvenile, the rehabilitation only needs to be the primary purpose and not the sole purpose. There are other tertiary purposes that are permissible under both the Federal Juvenile Delinquency Act and U.S. v. Juvenile. The record here showed that the juvenile committed his offense because he needed money to bail his brother out of jail and because of the influence of other friends that he had. And the Court was perfectly within its discretion to find that education and treatment would give the juvenile skills to succeed in endeavors other than drug trafficking. On ER 75 and 79, the judge noted, the facility in Stafford will teach you some English. It will teach you life skills. It will teach you some responsibility. And you will learn that this is not the way you get ahead in life. It could be very beneficial to you if you learn some other skills. We can't examine this entire sentence, as the Court noted, with microscopic scrutiny. We have to look at the overall sentence. Merely because the judge mentioned general deterrence doesn't mean that general deterrence was the sole or primary focus of its decision. The record also shows, as the Court noted, that it believed the juvenile needed to understand the consequences of its actions, and it realized it wouldn't be doing the juvenile any favors by enforcing that their life has no consequences. Can I ask this as a practical matter? Where are we? I assume that he's finished the six-month sentence. Yes, Your Honor. Is he now back in Mexico? I don't have any information about whether he's been removed or not from my conversations with the defense counsel. I believe he has been removed, but he's still under supervised release until age 21. Right. Although, if he's back in Mexico, the supervised release merely means that the period during which he can be sort of, how do I want to say, have consequences attached as a result of supervised release simply lasts that long if he comes back. Yes, Your Honor. As far as I'm aware, there's no active supervision. It's just he's in Mexico. Yes, Your Honor. That's absolutely correct. Also, now I'm going to talk about why the disposition imposed was the least restrictive means to accomplish the rehabilitation. Once the judge decided that some rehabilitation was necessary, because of the defendant's immigration status, he had very limited options. He decided going back to Mexico wasn't in his best interest. The Bureau of Prisons doesn't have any facilities in Mexico. They just have one secure detention facility in Arizona, and that was the only facility that he could really send him to. It was a three-hour drive from his family, but it was the best option he had under the law. He certainly didn't abuse his discretion by committing him there for less than the 12 months recommended by probation. Well, he also noted that during the four months where he'd been incarcerated closer to the border, his family had never visited. And he speculated that was because they couldn't get across the border. There is a little bit in the record. The probation said that, but I believe defense counsel also noted that the defendant's family had been visiting him, that they had some sort of border visa or something like that. It is unfortunate, but unfortunately it seems like that's just the problems we face when we have juveniles from Mexico and the United States. Another thing I did want to clear up is that neither the court nor probation thought that the defendant didn't need any rehabilitation. On page 13 of the addendum, probation said that the juvenile has no rehabilitative needs other than education, and that he has no behavioral problems other than, of course, the delinquent conduct. So there was a finding by both probation and the court that there was a need for rehabilitation and what that need was. If the Court doesn't have any further questions, I would just ask you to affirm the judgment in sentence. Thank you, Your Honor. Ms. Rosenberg. I'd just like to focus on the distinction between rehabilitative needs and educational needs, which all juveniles may need. In any juvenile case, you're going to have juveniles that are not, that have not reached the ideal level of education or an even preferred level of education. And so what we had here was English courses for a young man who is going to be returned to Mexico. These aren't the sort of rehabilitative needs that other juvenile cases talk about. These are not serious psychological problems, serious behavioral problems. And to put a child in custody that far away from his family, it doesn't seem to be justified by that reason. Thank you. Thank you, counsel. Thank you. The matter just argued will be submitted, and the Court will stand adjourned.
judges: Rymer, W. Fletcher, Clifton